**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Marlin James MACK, Defendant–
Appellant.**

No.  02–5211.

United States Court of Appeals,
Tenth Circuit.

June 7, 2004.

Philip E. Pinnell, Asst. U.S. Attorney, Kevin C. Danielson, Catherine J. Depew, Douglas Adam Horn, Chad Adrian Greer, Office of the United States Attorney, Tulsa, OK, for Plaintiff–Appellee.

Michael G. Katz, Fed. Public Defender, Vicki Mandell–King, Asst. F.P. Defender, Office of t he Federal Public Defender, Denver, CO, for Defendant–Appellant.

Before TACHA, Chief Circuit Judge, EBEL and HARTZ, Circuit Judges.

### ORDER AND JUDGMENT*

TACHA, Chief Circuit Judge.

A jury found Defendant–Appellant Marlin James Mack guilty of numerous counts relating to possessing with intent to distribute, and conspiring to possess and distribute, narcotics. On appeal, Mr. Mack urges three grounds for us to find error below: (1) a variance between his indictment and the verdict forms, (2) improper jury instructions, and (3) an improper limi-

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

tation upon his cross-examination of a government witness. We take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

This appeal represents the culmination of the government's investigation and prosecution of an extensive drug conspiracy. The government presented evidence at trial showing that the central player in the conspiracy was Darrell Bellamy of Phoenix, Arizona. From Phoenix, Mr. Bellamy coordinated shipments of powder cocaine, crack cocaine, and marijuana to various cities, including Tulsa, Oklahoma; Wichita, Kansas; and Detroit, Michigan. The government contends that Mr. Mack was a member of this conspiracy.

A federal grand jury indicted Mr. Mack and fifteen alleged coconspirators. The indictment charged Mr. Mack with the following: (1) conspiring to possess and distribute cocaine, crack cocaine, and marijuana in violation of 18 U.S.C. § 846; (2) possessing crack cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii); (3) conspiring to commit money laundering in violation of 18 U.S.C. § 1956(h); (4) possessing marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c); and (5) criminal forfeiture pursuant to 18 U.S.C. §§ 982 and 1956(h).

After a twenty-three-day trial involving over fifty witnesses, a jury convicted Mr. Mack on all counts. At trial, multiple witnesses testified to Mr. Mack's involvement in the conspiracy. Specifically, the government introduced the following evidence of Mr. Mack's involvement in the conspiracy: (1) the police arrested him in 1998 at a Tulsa airport in connection with a marijuana shipment; (2) he phoned and transferred money to Mr. Bellamy frequently during the duration of the conspiracy; (3) Mr. Mack assisted in and supervised the packaging and shipping of marijuana for the conspiracy on multiple occasions; (4) officers arrested Mr. Mack for possessing cocaine with intent to distribute outside of a Tulsa airport as he returned from Phoenix; and (5) several witnesses testified that Mr. Mack murdered two men that he claimed stole cocaine from him.

The District Court sentenced Mr. Mack to life in prison to be followed by five years' supervised release and imposed $15,517 in assessments and restitution. Mr. Mack filed timely notice of appeal, raising three issues. We address each in turn.

## II. DISCUSSION

### A. *Variance*

#### 1. *Standard of Review*

■ Mr. Mack first argues that a fatal variance existed between the grand jury indictment and the evidence presented at trial because the indictment alleged a single conspiracy whereas the evidence proved only multiple drug conspiracies. Because Mr. Mack failed to raise the issue of variance before the District Court, we review it for plain error. *United States v. Bailey*, 327 F.3d 1131, 1142 (10th Cir. 2003). To meet this standard, Mr. Mack must show that (1) there was error; (2) the error was "plain" or "obvious"; (3) the error affected his substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Edgar*, 348 F.3d 867, 871 (10th Cir.2003). If all four prongs are satisfied, we "may then exercise [our] discretion to notice [the] forfeited error." *United States v. Gonzalez Edeza*, 359 F.3d 1246, 1250 (10th Cir.2004).

## 2. *Merits*

Here, we need only consider the "dispositive fourth prong—whether the alleged [variance] affected the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1251. In cases of variance, a defendant cannot satisfy the fourth prong of plain error review if there is "overwhelming and essentially uncontroverted" evidence of his guilt as to the charged crime or a closely related crime on which evidence was submitted. *Id.*

Mr. Mack's claim fails under this standard. He admits in his brief that: (1) the government proved the existence of multiple drug conspiracies; (2) "the government's case was admittedly strong concerning the substantive counts against [him]"; (3) "there was ample evidence of [his] involvement with the *Tulsa* organization ... in distributing *marijuana*"; (4) he was arrested for transporting cocaine from Phoenix to Tulsa on August 22, 2000; and (5) he maintained extensive contact with Mr. Bellamy through phone conversations and money transfers. The record evidence supports these concessions. As such, we find that overwhelming and essentially uncontroverted evidence exists of Mr. Mack's participation in a drug conspiracy and that the "real threat ... to the fairness, integrity, or reputation of judicial proceedings would" come from vacating Mr. Mack's conviction.[1] *United States v. Cotton,* 535 U.S. 625, 634, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (internal quotations omitted). Thus, we decline to recognize plain error under Mr. Mack's variance claim.

## B. *Jury Instructions*

### 1. *Standard of Review*

■ Mr. Mack next argues that the District Court committed plain error because the conspiracy instructions given "did not adequately address the problem of single/multiple conspiracies." As we explained in a companion case, because Mr. Mack's counsel did not object individually to this issue at trial, we review this issue for plain error. *See United States v. Ray,* 370 F.3d 1039 (10th Cir.2004).

### 2. *Merits*

As with his variance claim, we need only consider the "dispositive fourth prong—whether the alleged [instructional] error affected the fairness, integrity, or public reputation of judicial proceedings." *Id.* Mr. Mack did not argue that the alleged instructional error affected the fairness, integrity, or reputation of judicial proceedings, as is his burden. *See United States v. Vonn,* 535 U.S. 55, 63, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002) ("[B]ecause relief on plain-error review is in the discretion of the reviewing court, a defendant has the further burden to persuade the court that the error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.") (internal quotations omitted). Moreover, our independent review convinces us that he cannot meet that standard.

---

1. Mr. Mack argued in his brief and at oral argument that no evidence established a "rim" between the various "spokes" of the alleged conspiracy. We note, however, that there is undisputed evidence that in July 1998 Richard Taylor, a codefendant and alleged member of the Tulsa "spoke" of the conspiracy, wired money to Kenneth Stiger and Mr. Mack, who were having car trouble in Dalhart, Texas. Although record evidence confirms Mr. Mack's characterization of Mr. Stiger as a member of the Phoenix "hub," we note that substantial evidence indicates that Mr. Stiger leased an apartment in Wichita, which he shared with his girlfriend. Therefore, contrary to Mr. Mack's suggestions, the record does evidence at least some connection between the Tulsa and Wichita "spokes" of the conspiracy. Because we decide this issue on different grounds, however, we need not definitively decide the structure of the conspiracy in this appeal.

A defendant cannot satisfy the fourth prong of plain error review if there exists "overwhelming and essentially uncontroverted" evidence of his guilt as to the charged crime or a closely related crime on which evidence was submitted. *Gonzalez Edeza*, 359 F.3d at 1251. For the same reasons we rejected Mr. Mack's variance claim, we also find that he cannot satisfy the fourth prong of plain error review here. As such, we affirm the District Court.

## C. Cross–Examination

### 1. Standard of Review

■ Finally, Mr. Mack argues that the District Court erred in refusing to allow his counsel to impeach Robert Robertson with his allegedly inconsistent grand jury testimony, styling this as a violation of both Fed.R.Evid. 613(b) and his Sixth Amendment right "to be confronted with the witnesses against him." U.S. Const. amend. VI. For Mr. Mack's evidentiary challenge, we review for an abuse of discretion whether an error occurred and, if so, whether the error was harmless. *United States v. Begay*, 144 F.3d 1336, 1339 (10th Cir.1998). The government bears the burden to show that a nonconstitutional error is harmless by a preponderance of the evidence. *United States v. Wittgenstein*, 163 F.3d 1164, 1169 (10th Cir.1998). An error "is harmless unless it had a 'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such effect." *United States v. Cestnik*, 36 F.3d 904, 910 (10th Cir. 1994).

As to the Sixth Amendment inquiry, we review de novo whether an error occurred and, if so, we review whether the error was harmless. *United States v. Joe*, 8 F.3d 1488, 1497 (10th Cir.1993). The government bears the burden to show that a constitutional error is harmless beyond a reasonable doubt. *Id.* (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). For Confrontation Clause violations, whether "an error is harmless depends on (1) the importance of the witness's testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of the actual cross-examination; and (5) the overall strength of the State's case." *Jones v. Gibson*, 206 F.3d 946, 957 (10th Cir.2000).

### 2. Merits

Mr. Mack contends that he suffered prejudice from this alleged error because Mr. Robertson's testimony was the "*sole* basis for viewing the murders allegedly committed by Mr. Mack as part of a single conspiracy" and that, absent Mr. Robertson's testimony, there was a "dearth of other evidence that the murders and the cocaine underlying those crimes were part of the *same conspiracy* charged in the indictment." Because, even reviewing under the more rigorous Confrontation Clause standard, the government meets its burden to prove harmlessness beyond a reasonable doubt, we need not definitively decide whether the District Court committed error in refusing to allow the impeachment. *See United States v. Magleby*, 241 F.3d 1306, 1318 (10th Cir.2001) ("Notwithstanding our doubts regarding the relevance of this testimony, we need not decide whether the district court abused its discretion in admitting it because we find that it was harmless error.").

First, although Mr. Robertson's testimony was undoubtedly helpful to the government, the record does not indicate that it was uniquely or especially important. Indeed, several witnesses testified to seeing Mr. Mack package marijuana at various locations, including Mr. Bellamy's home. Several witnesses also testified that they

purchased marijuana from Mr. Mack, with at least one witness stating that Mr. Mack told him that Mr. Mack received his marijuana from Phoenix. Furthermore, the government offered extensive phone records to indicate that Mr. Mack frequently called Mr. Bellamy and wired substantial amounts of money to Mr. Bellamy and other coconspirators during the alleged conspiracy. Moreover, Jennifer Natale, one of the conspiracy's chief couriers, testified that Mr. Mack drove her car back to Phoenix after she had dropped drugs in Tulsa and that he followed her during a drug transport from Phoenix to Tulsa. Because, in light of this evidence, we cannot say that Mr. Robertson's testimony was uniquely important to the government, this factor weighs in the government's favor.

Second, as shown above, much of Mr. Robertson's testimony duplicated other evidence of Mr. Mack's general drug activities. Again, this factor weighs in the government's favor.

Third, some witnesses disputed at least portions of Mr. Robertson's testimony, specifically those relating to Mr. Mack's alleged cocaine purchase from Mr. Bellamy in 2000. Nonetheless, Mr. Mack's August 2000 arrest for possessing with intent to distribute almost 120 grams of crack cocaine undoubtedly corroborates Mr. Robertson's testimony. As such, we find that this factor does not weigh particularly strong in favor of either party.

Finally, Mr. Mack admits that "the court did allow cross-examination of Robertson," and that "the court showed considerable latitude with" respect to the cross-examination of Mr. Robertson, even though "the cross examination techniques of several defense counsel tried the court's patience throughout the trial." Our independent review of the record confirms these concessions. Indeed, we note that the cross-examination of Mr. Robertson consumes nearly ninety pages of the record on appeal, with approximately fifteen of those attributable solely to Mr. Mack's trial counsel. We, therefore, find that this factor weighs decidedly in the government's favor.

After balancing these factors, we conclude that the government has proven beyond a reasonable doubt that the alleged limitation on Mr. Robertson's testimony did not affect the outcome of the trial. As such, we affirm the ruling of the District Court.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the District Court on all claims.[2]

2. Because we affirm the District Court on all claims, we need not address Mr. Mack's re- sentencing arguments.